UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X

SAGE FRUIT COMPANY, LLC, a Washington
limited liability company,

                                        07-CV-4204
                             Plaintiff,     (CPS)

        - against -

                                        MEMORANDUM
MICHAIL NASH CORP. D/B/A NASH EXPRESS    OPINION
PRODUCE, a New York Corporation; MORIS   AND ORDER
MICHAEL NASHONOV (NASH), an individual;
SERGEY NASHONOV, an individual; and
MICHAEL NASHONOV, an individual,

                             Defendants.

---------------------------------------------X

        Plaintiff Sage Fruit Company brings this action against

defendants Michail Nash Corp., d/b/a Nash Express Produce ("Nash

Express"), Moris Michael Nashonov ("Nash"), Sergey Nashonov

("Sergey"), and Michael Nashonov ("Michael").  In the Complaint,

plaintiff alleges that defendants have violated the provisions of

the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7

U.S.C. § 499a *et seq.*  Specifically, plaintiff seeks a

declaration that it is entitled to relief under 7 U.S.C. §§

499e(c)(3) and (4)[1], and enforcement of payment from PACA trust

_____

    [1]  7 U.S.C. § 499e(c) provides:

(c) Trust on commodities and sales proceeds for benefit of unpaid suppliers,
sellers, or agents; preservation of trust; jurisdiction of courts

(1) It is hereby found that a burden on commerce in perishable agricultural
commodities is caused by financing arrangements under which commission
merchants, dealers, or brokers, who have not made payment for perishable
agricultural commodities purchased, contracted to be purchased, or otherwise
handled by them on behalf of another person, encumber or give lenders a
security interest in, such commodities, or on inventories of food or other
products derived from such commodities, and any receivables or proceeds from

assets, pursuant to 7 U.S.C. § 499e(c)(5).  Plaintiff also

_____

the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of Title 12, and its members.

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received".

(5) The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.

alleges (1) violations of PACA's requirement that Nash Express

maintain PACA trust assets, 7 U.S.C. § 499b(4),[2] (2) PACA's

requirement that Nash Express make full payment promptly, *id.*,

(3) breach of contract, (4) breach of fiduciary duty, (5)

conversion and unlawful retention of PACA trust assets, and (6)

fraudulent transfer.  Plaintiff commenced this action on October

9, 2007, and on October 10, 2007, upon plaintiff's *ex-parte*

submissions, I signed a Temporary Restraining Order.  Now before

this court is plaintiff's motion for a preliminary injunction, on

which I held a hearing on October 29, 2007[3].  Plaintiff also

seeks to consolidate the trial on the merits with the hearing on

the preliminary injunction.  Upon the findings of fact and

conclusions of law set forth below, plaintiff's motion for a

---

[2]  7 U.S.C. § 499b(4) provides, in relevant part:
It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:. . .

(4) For any commission merchant, dealer, or broker . . . to fail to maintain the trust as required under section 499e(c) of this title.

[3]  Plaintiff served the individual defendants pursuant to N.Y. CPLR § 308(4), which provides for service by affixing the summons to the door of the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons.  CPLR § 311(a)(1) provides that service upon a corporation shall be made by delivering the summons to an officer or director of the corporation.  As the individual defendants are officers of Nash Express, service was effected upon Nash Express as well.
Service pursuant to CPLR § 308(4), however, is not complete until 10 days after plaintiff files affidavits of service.  Plaintiff filed the affidavits of service as to all defendants on October 16, 2007.  Such service was necessary because defendants could not be found at the registered address for Nash Express or at their residences and, though reachable by phone, refused to give plaintiff an address at which service could be made, a fax number, or to otherwise provide for service.  Thus, on October 16, 2007, I extended the TRO for good cause shown to allow time to complete service due to defendants' attempts to thwart service, and rescheduled the preliminary injunction hearing for October 26, 2007.  At plaintiff's request, the hearing was then adjourned to October 29, 2007.

preliminary injunction is granted against defendants and its

motion to consolidate is denied.

## Background

The following findings of facts are derived from the

underlying allegations in plaintiff's Complaint, affidavits

submitted by plaintiff in connection with this motion, and from

the proceeding before the undersigned on October 29, 2007.  There

are no factual disputes between the parties requiring an

evidentiary hearing.  *See Davis v. New York City Housing*

*Authority*, 166 F.3d 432, 437-38 (2d Cir. 1999).

Plaintiff is engaged in the business of buying and selling

wholesale quantities of perishable agricultural commodities[4] in

interstate commerce, and is a PACA licensee.  Defendant Nash

Express is a New York Corporation with its principal place of

business in Brooklyn, New York.  Defendant Nash is the President

of Nash Express.  Defendant Sergey is an officer, principal, and

consultant of Nash Express.  Defendant Michael is an officer and

principal of Nash Express.  Plaintiff has been doing business

with Nash Express since November 2004.

Plaintiff alleges that Nash Express was a commission

---

[4]  7 U.S.C. § 499a(b)(4)(A) defines "perishable agricultural commodity"
as "any of the following, whether or not frozen or packed in ice: Fresh fruits
and fresh vegetables of every kind and character. . ."  Apples clearly fall
within this definition.

merchant, dealer or broker[5] operating subject to the provisions

of PACA.[6]   Chuck Yow, Eastern Regional Representative for

plaintiff, by a supplemental declaration submitted in this

matter, states that Nash Express's business consists of the

buying and selling of perishable agricultural commodities.  Yow

has also attached exhibits to his supplemental declaration

showing that Nash Express is a PACA licensee and that it

specializes in various types of tomatoes, but also deals in

grapes, apples, pears, oranges, and several other fruits.

Plaintiff further alleges that between February 26, 2007 and

April 25, 2007, plaintiff sold to Nash Express apples, which

plaintiff delivered and which Nash Express accepted.[7]  Plaintiff

alleges that $50,991.00 remains owing for the apples delivered

during the period at issue.

Steve Black is a salesperson for plaintiff and was the

salesperson who sold the produce at issue to Nash Express.  He

---

[5]  Essentially, these terms encompass persons (including corporations) engaged in the business of receiving, buying, selling, or negotiating the sales and purchases of, in interstate or foreign commerce, perishable agricultural commodities.  7 U.S.C. § 499a(5-7).  7 U.S.C. § 499a(6) further provides that even if one does not meet the definition of a "dealer" under § 499a(6), such person may elect to obtain a PACA license and will be deemed a dealer while the license is in effect.  As discussed below, Nash Express is a PACA licensee and thus should be considered a dealer subject to PACA's terms.

[6]  Defendants have not opposed the preliminary injunction and do not dispute that they are subject to PACA's trust provisions.

[7]  According to a declaration of Steven De Falco, an attorney representing plaintiff, he reached Sergey by telephone on October 18, 2007. Sergey questioned the quality of some of the shipments of the produce at issue, but Steve Black, a salesperson for plaintiff, has never received any complaints about quality from any of defendants or received any inspections from defendants.

has also been involved in the process of attempting to recover the unpaid invoices from Nash Express.  According to Black's declaration, when Nash Express's inability to satisfy its PACA trust obligations to plaintiff became apparent, he began investigating Nash Express's financial position on behalf of plaintiff.  Prior to April, 2007, his primary contact at Nash Express was its President Nash.  According to Black, when, in the past, Nash Express would become delinquent in payments owed to plaintiff, Black would contact Nash, who would usually bring the account to current or near current.  However, in April 2007, plaintiff noticed that Nash Express became slower than usual in payment of its outstanding invoices.

Black thus began calling Nash on a weekly basis to discuss Nash Express's outstanding balance.  Nash told Black on several occasions to fax an accounting of the outstanding invoices and that payment would be sent soon thereafter, but payment was never received.  Chuck Yow, according to his declaration, was alerted to Nash Express's delinquency in July 2007, and, at that time, contacted Black to discuss the problem.  Black apprised Yow of his efforts.

According to Black, he continued to make weekly calls to Nash from May through August 2007.  Again, he was promised payment, but payment was never sent by Nash Express.  In August 2007, Black called Nash to inform him that plaintiff would not

sell any additional produce to Nash Express.  Nash told Black

that he needed to speak with his son, defendant Michael.  Nash

explained that he had moved to Chicago and no longer had a role

with the company's current operations.  Nash said Michael was out

of the country but would return after two weeks.  Yow also

attempted to contact Nash in August 2007, by email, but Nash did

not respond.

Yow followed up with a phone call in September 2007, which

Nash returned.  Nash told Yow essentially what he had told Black

- that Yow should contact Michael, but Michael was out of the

country for two weeks.  According to Yow, Nash acknowledged the

outstanding balance to plaintiff, but told Yow that Nash Express

could not make payment as a result of losses the company suffered

from damages to crops in foreign countries.  Nash asked that

plaintiff be patient as he needed to pay other vendors before

payment could be made to plaintiff.  Yow said such an arrangement

was unacceptable and demanded full payment.  Nash said he could

not make full payment at that time.

When the two weeks had passed, both Black and Yow attempted

to contact Michael, but their phone calls were not returned.

Black tried Nash again, who reiterated that Black should speak to

Michael, and informed Black that Michael had not yet returned.

Yow also contacted Nash.  According to Yow, Nash again admitted

that Nash Express could not pay plaintiff for the invoices at

issue.  Nash explained that since his son, Michael, had taken over Nash Express many vendors had not received payment and that he was flying to New York to reorganize the company.

Following his last call with Nash, Black increased his calls to Michael, trying to reach him two or three times per week. Michael never returned Black's calls.  Black made several additional attempts to contact both Nash and Michael towards the end of September and the beginning of October.  Neither returned his calls.

On October 1, 2007, however, Michael called Yow concerning the outstanding invoices.  Michael admitted that the company could not pay plaintiff and requested that plaintiff "work with" Nash Express so that he could stabilize the company.  Michael guaranteed that payment would be made once Nash Express was profitable again.  Yow said he could not commit to any agreement until he conferred with others at plaintiff.  Michael then advised Yow that he intended to close Nash Express because a vendor had filed a lawsuit to recoup damages resulting from Nash Express's poor quality product and overpricing.

Yow consulted with plaintiff's COO, Steve Clement, regarding Michael's offer to postpone legal action.  Clement told Yow to reject the offer, and to notify both Nash and Michael that plaintiff would be filing a lawsuit.  Yow left several messages for both Nash and Michael, but neither returned his calls.

According to Black, Nash Express owes $50,991.00 for invoices dating back to February 26, 2007; invoices corroborating this amount are attached to Black's declaration.

## Discussion

Plaintiff moves for a preliminary injunction enforcing the PACA statutory trust, 7 U.S.C. § 499e(c)(4), by segregating all trust assets[8] of Nash Express, and an Order consolidating the hearing on the preliminary injunction with trial on the merits.

*a. Preliminary injunction*

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir.

---

[8] The trust assets consist of perishable agricultural commodities, as defined by 7 U.S.C. § 499a(b)(4)(A), all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products. 7 U.S.C. § 499e(c)(2); *see also* 7 C.F.R. § 46.46(b) ("Trust assets"). The PACA trust in this case would have been established as soon as any produce was sold to Nash Express within the meaning of PACA and the trust "continues in existence until all of the outstanding beneficiaries have been paid in full." *In re Kornblum & Co.*, 81 F.3d 280, 286 (2d Cir. 1996). Further, under *Kornblum*, all assets of Nash Express acquired after a trust under PACA was first established are subject to the trust unless Nash Express establishes "(1) no PACA trust existed when the [assets] were purchased; (2) even though a PACA trust existed at that time, the [assets] were not purchased with trust assets; or (3) although a PACA trust existed when the [assets] were purchased and the [assets] were purchased with trust assets, [defendant] thereafter paid all unpaid sellers in full prior to the transactions involving [plaintiff], thereby terminating the trust." *Id.* at 287.

1996).

Plaintiff has demonstrated irreparable harm. "[T]he irreparable harm . . ., as in other PACA cases, is the risk that defendant will have dissipated the PACA trust without paying the plaintiff, leaving the plaintiff 'out of luck and out of money.'" *Ger-Nis Int'l, Inc.*, *v. FJB, Inc.*, 2007 WL 656851 (S.D.N.Y. March 1, 2007) (quoting *Horizon Mktg. v. Kingdom Int'l, Ltd.*, 244 F. Supp.2d 131, 140 (E.D.N.Y. 2003)). Plaintiff has submitted declarations from two employees which state that defendants Nash and Michael said Nash Express did not have sufficient funds to pay plaintiff, that Nash Express might be shut down, and that Nash Express needed to pay other vendors before plaintiff. Thus, I find that there is a clear danger that the trust assets may be dissipated by Nash Express in an attempt to settle significant debts with parties other than plaintiff. Therefore, there is a likelihood of irreparable harm and injunctive relief is appropriate to preserve the status quo.

Additionally, plaintiff has demonstrated a likelihood of success on the merits. Plaintiff sold apples to Nash Express and apples are encompassed within the definition of the perishable agricultural commodities. Plaintiff is also a PACA licensee. Defendants do not dispute that Nash Express is subject to the PACA trust mechanism and Nash Express is itself a PACA licensee. Plaintiff has submitted invoices which contain the language

necessary to perfect its trust interest by notice.  *See* 7 U.S.C.

§ 499(e)(3) and (4); 7 C.F.R. § 46.46(f)(3)(i).  And the

invoices, together with the declarations of Black and Yow,

demonstrate that the invoices have not been paid in full.

Accordingly, based on the above findings of fact and conclusions

of law, and as set out in the accompanying order, the motion for

a preliminary injunction[9] against defendants is granted,

requiring defendants to segregate perishable agricultural

commodities, all inventories of food or other products derived

from perishable agricultural commodities, and any receivables or

proceeds from the sale of such commodities or products, including

any assets purchased or otherwise acquired with such proceeds,

---

[9]  The relief plaintiff seeks in the preliminary injunction, segregating all of Nash Express's trust assets, is appropriate.  *See D'Arrigo Bros. Co. v. N. Am. Produce Corp.*, 1991 WL 274471 (S.D.N.Y. Dec. 9, 1991) (in PACA case, finding irreparable harm and likelihood of success prongs met, and issuing a preliminary injunction ordering defendant to set aside and preserve in trust for plaintiff's benefit the proceeds from its assets until plaintiff has been fully paid); *see also Finest Fruits, Inc. v. Korean Produce Corporation*, 1987 WL 18454 (S.D.N.Y. Oct. 2, 1987) (in PACA case, granting preliminary injunction ordering defendant to place in trust amount reflected in plaintiff's invoices in an interest bearing account under court supervision). *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990) does not counsel otherwise.  In *JSG*, the Second Circuit held that PACA does not require a buyer to segregate trust assets due to a specific seller from other trust assets, because Congress intended to create a "floating trust" of all trust assets which would be subject to claims of all unpaid sellers.  *Id.* at 78. Plaintiff in this case requests that all trusts assets, for all sellers, be segregated, not just those due to plaintiff, which is in keeping with the Second Circuit's holding in *JSG* that PACA creates a "floating trust." Further, the Second Circuit continued "we see nothing in [PACA] that would prohibit the court from exercising its traditional equity powers to grant a preliminary injunction at the instance of a private litigant if the normal standards for such relief are met."  *Id.*  The Second Circuit reversed the district court's grant of a preliminary injunction in *JSG* because the plaintiff made no showing that it would suffer irreparable harm if the funds were not segregated, because all the evidence demonstrated that the defendant was solvent and was not converting trust funds.  In this case, the evidence demonstrates the opposite and plaintiff has thus shown irreparable harm.

from October 27, 2004,[10] from other corporate assets, and

enjoining defendants from dissipating such assets.[11]

   b.   *Motion to consolidate trial on the merits*

   Rule 65(a)(2) provides:

   Before or after the commencement of the hearing of an
   application for a preliminary injunction, the court may
   order the trial of the action on the merits to be
   advanced and consolidated with the hearing of the
   application. Even when this consolidation is not
   ordered, any evidence received upon an application for
   a preliminary injunction which would be admissible upon
   the trial on the merits becomes part of the record on
   the trial and need not be repeated upon the trial. This
   subdivision (a)(2) shall be so construed and applied as
   to save to the parties any rights they may have to
   trial by jury.

As defendants have not appeared in this case, I do not

believe it is appropriate to consolidate the preliminary

injunction hearing with the trial on the merits.

### Conclusion

   For the reasons set forth above, and as set forth in the

accompanying order, plaintiff's motion for a preliminary

injunction is granted and plaintiff's motion to consolidate the

hearing with the trial on the merits is denied.  The Clerk is

directed to transmit a copy of the within to all parties and to

---

   [10]   The trust is established upon any sale of any perishable
agricultural commodities subject to PACA.  *See Kornblum*, 81 F.3d at 286.
Plaintiff has made no showing that Nash Express was subject to the terms of
PACA prior Nash Express's obtaining its PACA license on October 27, 2004.
Thus, the preliminary injunction does not apply to assets of Nash Express
obtained prior to October 27, 2004.

   [11]   The accompanying Preliminary Injunction, issued October 29, 2007,
does not affect the individual defendants' personal assets.

the assigned Magistrate Judge.

        SO ORDERED.

Dated :    Brooklyn, New York
           October 29, 2007

                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                            United States District Judge